IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

INGARD CECILE MCCONNIE
NAVARRO

    Debtor

INGARD CECILE MCCONNIE
NAVARRO

    Plaintiff

      v.

BANCO POPULAR DE PUERTO
RICO; DLJ MORTGAGE CAPITAL,
INC.; SELECT PORTFOLIO
SERVICING, INC.

    Defendants

CASE NO. 10-04937 (ESL)

CHAPTER 7

ADV. PROC. NO. 15-00235 (ESL)

OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion for Summary Judgment* filed by Ingard Cecile McConnie Navarro (hereinafter referred to as the "Plaintiff" or "Debtor") arguing that creditor Banco Popular de Puerto Rico and Select Portfolio Servicing, as servicing agent for DLJ Mortgage Capital, Inc. (hereinafter referred to as "BPPR" "SPS" and "DLJ Mortgage" respectively) violated the discharge injunction when they filed a foreclosure action in state court and sent collection letters disguised as a "statement for informational purposes only" to collect on a discharged debt (Docket No. 18). BPPR in its *Reply to Plaintiff's Motion for Summary Judgment* contends that the mortgage loan was not subject to discharge because the mortgage deed was presented pre-petition to the Property Registry and the deed was recorded post-discharge in conformity with the relation back principles of 11 U.S.C. §§362(b)(3), 544(a) & 546(b)(1)(A) and of Article 53 of the Puerto Rico Mortgage Law which

-1-

causes the recordation of a timely presented mortgage deed to relate back to the date of presentation of the mortgage deed which is the date of perfection of the security interest (Docket No. 24). DLJ and SPS in their *Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment* argue that the letters sent by SPS provided information related to DLJ's exercise of its *in rem* rights over the real property and did not demand payment from the Debtor. DLJ argues that it has a valid and enforceable lien over Debtor's real property and as a secured creditor it can foreclose on the mortgaged property (Docket No. 28). The Debtor filed her *Reply to BPPR's, DLJ's and SPS' Replies to Debtor's Motion for Summary Judgment* arguing that "… since the State Court found that the property was registered to another entity and not the debtor, and the Banco Popular did not take any steps to cure the defect, this interrupts the "relate back" principle, thus leaving the discharged debt fully discharged." (Docket No. 36). Subsequently, DLJ and SPS filed their Sur-reply and the Debtor filed her Reply to the Sur-reply (Docket Nos. 37 & 42). For the reasons stated below the Plaintiff's *Motion for Summary Judgment* is hereby denied and *DLJ and SPS' Opposition to Motion for Summary Judgment* is hereby granted.

### Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2)(A), (I) & (K). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

### Facts and Procedural Background

The Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on June 5, 2010 (lead case No. 10-04937[1]). The Debtor in her Schedule A (Real Property) scheduled the apartment at Palmas del Mar with a current value of $210,000 and a secured claim in the amount of $206,758.78. The Debtor in Schedule D (Creditors Holding Secured Claims) listed Banco Popular as the mortgage lien holder over the apartment at Palmas del Mar in the amount of $206,758.78. On July 13, 2010, the 341 meeting of creditors was held and closed (lead case,

---

[1] References to the lead case are to the entries and documents filed in the bankruptcy case, case number 10-04937 (ESL).

Docket No. 8). On July 15, 2010, the Chapter 7 Trustee filed the *Report of No Distribution* (lead case, Docket No. 9). On July 16, 2010, the Chapter 7 Trustee filed a *Notice of Abandonment of Property* informing that he intends to abandon the Palmas del Mar apartment (lead case, Docket No. 10). On September 14, 2010, the Court ordered the discharge of the Debtor pursuant to 11 U.S.C. §727 (lead case, Docket No. 15). On September 24, 2010, the *Order Discharging Trustee and Closing the Case* was entered (lead case, Docket No. 17). The case was closed on September 24, 2010. On November 14, 2010, BBPR filed a *Notice of Appearance* (lead case, Docket No. 19).

Subsequently, on March 10, 2014, the Debtor filed a second bankruptcy petition under Chapter 13 of the Bankruptcy Code (second case No. 14-01796[2]). The Debtor in her Schedule A (Real Property) scheduled the apartment at Palmas del Mar with a current value of $175,000 and a secured claim in the amount of $0. The 341 meeting of creditors was initially scheduled for April 16, 2014 and it was continued twice until it was held and closed on June 3, 2014 (second case, Docket No. 5, 20, 24, 28 & 34). On August 8, 2014, the Debtor's plan of reorganization dated March 10, 2014 was confirmed (second case, Docket No. 39). The plan of reorganization disclosed that Debtor did not have any secured claims.

On October 3, 2014, DLJ Mortgage Capital Inc. filed a *Motion Requesting Relief from the Automatic Stay* pursuant to 11 U.S.C. §362(d)(1) requesting that the automatic stay be lifted to continue with the state foreclosure proceedings against the real property. DLJ stated that pursuant to a title study dated July 24, 2014, the Debtor is the owner of the mortgaged property and has failed to comply with the terms and conditions of the mortgage and is in arrears since April 2014 and thus, the principal owed is in the amount of $215,300 plus interests accrued, $2,710.68 in late charges, $250 for attorney's fees and $176 in filing fees (second case, Docket No. 42). On October 13, 2014, the Debtor filed her *Reply to Motion Filed by DLJ Mortgage Capital Requesting the Lift of the Automatic Stay Pursuant to 11 U.S.C. §362* (second case, Docket No. 49). On October 28, 2014, a hearing regarding the motion to lift the automatic stay

---

[2] References to the second case are to the entries and documents filed in the bankruptcy case, case number 14-01796 (ESL).

was held and the court ordered as follows: "1-Debtor shall provide to movant all documents (in Spanish) in support of its position within 10 days. 2- DLJ shall move the court within 14 days thereafter stating its position to the defense raised by debtor. 3- The parties will jointly move the court 10 days thereafter informing on the status of the contested matter and if an evidentiary hearing is necessary (with estimate of time). 4- If an evidentiary hearing is scheduled, the parties shall file 7 days prior to the same; the uncontested facts and proposed findings on the contested facts, each finding shall make a reference to either a document (Exhibit) or witness" (second case, Docket No. 50). On December 22, 2014, the Court ordered the following: "Upon the parties' failure to comply with this court's order of October 28, 2014 (dkt #50), and it being moving creditor's burden, DLJ is hereby ordered to show cause within 21 days why the motion should not be denied for the failure to prosecute" (second case, Docket No. 5 3). On January 12, 2015, SPS as servicing agent of DLJ filed a *Motion Requesting Extension of Time to File Response to Order to Show Cause* (second case, Docket No. 55) and the same was granted on January 13, 2015 (second case, Docket No. 56). On January 14, 2015, *Debtor filed a Motion for Extension of Time and to Inform* (second case, Docket No. 57) and the same was granted on January 16, 2015 (second case, Docket No. 60).

On January 14, 2015, SPS as servicing agent of DLJ filed its *Response to Order and Request that Relief from Stay be Granted* arguing that invalidating a lien on a real property is different than placing an embargo on a property. The state court, "…simply denied a request to place an embargo on the property since it had not been properly registered in the name of the Debtor at the time of the request (it was pending review and inscription)(second case, Docket No. 58). On January 16, 2015, the court denied DLJ's motion premised upon relief from the automatic stay without prejudice to moving the court after the extension granted to Debtor's motion (dkt #57) and the parties' compliance with this court's order of October 28, 2014 (dkt#50) (second case, Docket No. 61).

On March 13, 2015, the court scheduled a hearing regarding DLJ's motion for relief from the automatic stay and the Debtor's reply for July 7, 2015 (second case, Docket No. 67).

On July 1, 2015, the Debtor and SPS as the servicing agent for DLJ filed a *Joint Motion Requesting Extension of Time* of thirty (30) days to file the proposed findings of fact and conclusions of law (second case, Docket No. 69) and the same was granted on July 2, 2015.

On October 11, 2015, the Debtor filed a *Motion Requesting Reopening* (lead case, Docket No. 21) in order to proceed with the adversary proceeding against BPPR, SPS and DLJ premised upon the alleged violation of the discharge injunction. Also on that same date, the Debtor filed a *Request for Consolidation Pursuant to Rule 1015 of the Bankruptcy Rules and Request of Order of Stay of Proceedings in Case No. 14-01796* (lead case, Docket No. 22). On November 2, 2015, the court granted Debtor's request to reopen the case (lead case, Docket No. 24). On January 6, 2016, the Debtor filed a *Motion to Withdraw the Request for Consolidation Pursuant to Rule 1015 of the Bankruptcy Rules and Request to Vacate Hearing* (lead case, Docket No. 28) and the same was granted on January 7, 2016 (lead case, Docket No. 29).

The hearing on the relief from the automatic stay was rescheduled to October 27, 2015 (second case, Docket No. 70). On October 20, 2015, the court ordered as follows: "[u]pon DLJ Mortgage Capital Inc. (DLJ) failure to file the proposed findings of fact and conclusions of law as ordered by this court on July 2, 2015 (dkt #70), DLJ's motion to lift the automatic stay (dkt #42) is hereby denied without prejudice. The hearing scheduled for October 27, 2015 at 10:30 A.M. is hereby vacated and set aside (second case, Docket No. 73). On October 20, 2015, SPS as servicing agent for DLJ filed its *Pre-Trial Report* (second case, Docket No. 75).

Subsequently, on November 19, 2015 DLJ filed a *Motion Requesting Relief from the Automatic Stay* (second case, Docket No. 80). On December 8, 2015, the court granted DLJ's motion for relief from the automatic stay by default upon respondent's failure to oppose said motion (second case, Docket No. 85). On December 18, 2015, the Debtor filed the *Motion to Reconsider Order Lifting Automatic Stay* (second case, Docket No. 90) and the same was granted on January 8, 2016 (second case, Docket No. 95). On March 28, 2016, the court granted the Debtor's discharge under 11 U.S.C. §1328(a) and on the same date the court ordered the

discharge of the Chapter 13 Trustee and the closing of the estate (second case, Docket Nos. 104 & 105).

*Adversary Proceeding*

On September 14, 2015, the Plaintiff filed the instant adversary proceeding alleging that DLJ and/or BPPR had violated the discharge injunction by "…collecting moneys and prosecuting the foreclosure of a discharged loan" (Docket No. 1, pg. 6). The adversary proceeding was filed as arising in bankruptcy case number 10-04937 and while case number 14-01796 was pending. On October 8, 2015, BPPR filed a *Motion for Extension of Time to File Answer to the Complaint* of forty five (45) days (Docket No. 7) and the same was granted on October 9, 2015 (Docket No. 8). On October 15, 2015, DLJ and SPS filed a *Motion Requesting an Extension of Time to Plead* of thirty (30) days (Docket No. 10) and said extension was granted on October 23, 2015 (Docket No. 11).

On November 21, 2015, BPPR filed its *Answer to the Complaint* (Docket No. 13). On November 16, 2015, codefendants DLJ and SPS filed a joint *Motion Requesting an Additional Extension of Time to Plead* of ten (10) days (Docket No. 14) and said extension was granted on November 30, 2015 (Docket No. 15). On December 1, 2015, DLJ and SPS filed their *Answer to the Complaint* (Docket No. 16).

On January 21, 2016, the Debtor filed a *Motion for Summary Judgment* arguing that BPPR and SPS, as servicing agent for DLJ violated the discharge injunction when they filed a foreclosure action in state court and sent collection letters disguised as a "statement for informational purposes only" to collect on a discharged debt (Docket No. 18). On January 22, 2016 a preliminary pretrial hearing was held in which the Plaintiff clarified that the action is one for violation of the discharge injunction and not for violation of the automatic stay. The court granted Defendants twenty (20) days to oppose the motion for summary judgment (dkt #18) or file a cross motion for summary judgment. The Plaintiff was granted 14 days to reply and the pretrial hearing was continued without a date (Docket No. 21).

On February 19, 2016, BPPR filed its *Reply to Plaintiff's Motion for Summary Judgment* contending that the mortgage loan was not subject to discharge because the mortgage deed was presented pre-petition to the Property Registry and the deed was recorded post-discharge in conformity with the relation back principles of 11 U.S.C. §§362(b)(3), 544(a) & 546(b)(1)(A) and Article 53 of the Puerto Rico Mortgage Law which causes the recordation of a timely presented mortgage deed to relate back to the date of presentation of the mortgage deed which is the date of perfection of the security interest. BPPR argues that in the instant case, the mortgage deed was pending recordation at the time of the first bankruptcy petition and was not notified of any defect. Moreover, the discharge which was entered did not impede or hinder the Property Registrar's ability to consider the duly presented deeds and record the same. Thus, the recordation of the mortgage in the year 2012 does not violate the discharge injunction (Docket No. 24).

On March 3, 2016, DLJ and SPS filed their *Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment* arguing that it has a valid surviving mortgage interest and enforceable pre-petition lien over Debtor's real property and as a secured creditor it can foreclose on the mortgaged property. The denial of the attachment in the state court case, contrary to Debtor's allegations does not nullify or alter the mortgage creditor's lien over the real property. DLJ argues that the letters sent by SPS (as the loan servicer) provided information related to DLJ's exercise of its *in rem* rights over the real property and the same did not demand payment from the Debtor. DLJ mailed the following: (i) two (2) escrow account statements for the years 2014 and 2015 which were not related to the collection of a debt. The escrow account statements communicate information to the Debtor that is required by law pursuant to 24 C.F.R. §3500.17(b); (ii) four (4) letters were mailed related to the flood insurance in the year 2015. The language of the flood insurance letters indicate in bold letters that the information provided "is intended for informational purposes only and is not considered an attempt to collect a debt." A Mortgagee may provide notice of an escrow shortage and monthly statements to a debtor who has not stated an intention to surrender the collateral;

and (iii) the monthly statements that were sent to the Debtor stated clearly at the top half of the first page in bold capital letters that "THI IS NOT AN ATTEMPT TO COLLECT A DEBT. THIS STATEMENT IS BEING SENT FOR INFORMATIONAL PURPOSES ONLY. We acknowledge your bankruptcy filing…." These monthly statements are not attempts to collect a debt against the Debtor. The monthly loan statements sent to the Debtor are a requirement under the Truth in Lending Act and Regulation Z that requires that mortgage lenders provide the consumer a statement for each billing cycle pursuant to 12 C.F.R. §1026.41(a)(2). In this case, the loan statements sent to the debtor do not set forth an amount due, payment due date nor the amount of any late fees. The coupon at the bottom of each statement indicates that no amount is being solicited from the debtor. The "amount due" in the monthly statements lists the amount due as zero. DLJ further argues that it did not violate the discharge injunction as to the state court proceedings, given that DLJ filed in state court the *Motion to Substitute* on November 13, 2013 wherein it informed the state court that it had acquired the loan. In its *Motion in Compliance with Court Order*, DLJ informed the court that it was only trying to enforce its *in rem* rights over the collateral. Upon learning that the Debtor had filed again for bankruptcy, no further action was taken or motions filed in state court. Instead, DLJ appeared before this court and requested for the lifting of the automatic stay in case No. 14-01796 so that it could proceed *in rem* against the real property (Docket No. 28).

On March 4, 2016, the Plaintiff filed a *Motion Requesting Extension of Time* of thirty (30) days and the same was granted on March 7, 2016 (Docket Nos. 30 & 31). On April 6, 2016, the Plaintiff filed her Response to Banco Popular's Reply to Debtor's Undisputed Facts (Docket No. 33). On April 6, 2016, the Debtor filed her *Reply to SPS and DLJ's Statement of Undisputed Material Facts* (Docket No. 34).  On April 6, 2016, the Plaintiff also filed her *Reply to SPS and DLJ's Reply to Debtor's Statement of Uncontested Facts* (Docket No. 35).  On said date, the Debtor filed her *Reply to Banco Popular de Puerto Rico, SPS and DLJ's Replies to Debtor's Motion for Summary Judgment* arguing as follows: (i) "… since the State Court found that the property was registered to another entity and not the debtor, and Banco Popular did not

take steps to cure the defect, this interrupts the 'relate back' principle, thus leaving the discharged debt fully discharged;" (ii) the state court denied BPPR's request for Annotation of Seizure and provided BPPR with these two options; (1) to inscribe the document by which the Defendant acquired the property within the next 30 days or (2) sue the registered owner as a party in the lawsuit. The bank did not comply with the state court's order; (iii) "This made the unperfected mortgage registry the law of the case and as such, when the Registrar did finally inscribe the mortgage, because Banco Popular had failed to act in accordance with the Court's instructions, they are now barred from claiming the benefits of the 'relates back' doctrine. This is the law of the case;" (iv) "…. the fact that Banco Popular never sued the [r]egistered owner of the property nor inscribed the document by which Debtor acquired the property when ordered to do so by the State Court, now bars them from claiming the 'relates back' effect of Puerto Rico Mortgage Law. Therefore, when the Registrar finally did inscribe the mortgage, the lack of any action on the part of Banco Popular to correct the defects notified by the Court made the debt one fully discharged when the Bankruptcy Court granted the discharge to the Debtor;" (v) the statements sent by DLJ besides stating that they have been sent for informational purposes only. They also state that, "[a]ny payments made on your account should be sent to the address listed on the attached payment coupon." The monthly payment coupon has the following instructions: "make your check payable to Select Portfolio Services." The Debtor alleges that this is in clear violation of the discharge despite including that it was charging $0.00; and (vi) SPS/DLJ's' actions are contrary to what was resolved in Whitman-Nieves, 519 B.R. 1, 12 (Bankr. D.P.R. 2014), in which the court held that, "… when PRFCU sent the payment booklet to co-debtor Barnes Adams at her mother's address, to wit, the Guarantor, it violated the discharge injunction." In In re Drapper, 237 B.R. 502, 506 (Bankr. M.D. Fla. 1999) the bankruptcy court held that: "… several bankruptcy courts have found a violation of the automatic stay when the creditor did not plainly ask for payment from the debtor" and that, "…the only credible reason to send such invoices on a monthly basis is to try to collect payment from debtors protected by the automatic stay;" See also; In re Nassoko, 450 B.R. 515 (Bankr. S.D.N.Y. 2009); Faust v.

Texaco, 270 B.R. 310, 317 (Bankr. M.D. Ga. 1988); In re Harlan, 402 B.R. 703, 715 (Bankr. W.D. Va. 2009) (Docket No. 36).

On May 12, 2016, DLJ and SPS filed a *Motion for Leave to File a Sur-Reply to the "Reply to […] DLJ's and SPS' Replies to Debtor's Motion for Summary Judgment" at Docket No. 36*. DLJ and SPS contend the following: (i) the "attachment of a defendant's property [under Rule 56.1 of the Puerto Rico Rules of Civil Procedure] is one of the temporary remedies available to a litigant who has obtained, or who expects to obtain a judgment in his favor and wishes to secure the effectiveness of the same." "This is especially true when a mortgage deed has not yet been recorded, it is "perfectly lawful for a creditor to resort to a preventive measure as is the attachment to protect his rights and prevent the judgment from becoming ineffective" See P.R. Prod. Credit Assoc. v. Registrador, 23 P.R. Offic. Trans. 213 (1989). Since DLJ's request for attachment and/or prohibition to alienate under Rule 56.1 of the Puerto Rico of Civil Procedure was denied by the state court, it was forced to wait until its security interest (mortgage) was recorded by the Property Registrar to enforce the judgment entered in its favor. However, the derail of the request for attachment and/or prohibition to alienate does not "freeze" or bar the perfection of a mortgage; (ii) BPPR opted to wait until the mortgage was recorded in the Property Registry so that it could then request execution of the judgment. The February 3, 2012 state court Order did not in any way affect the validity of DLJ's mortgage and its eventual recording; (iii) a discharge injunction does not prohibit a secured creditor from sending post-discharge letters for informational purposes only as held in Best v. Nationstar Mortgage, LLC, 540 B.R. 1 (B.A.P. 1st Cir. 2015); See In re Zotow, 432 B.R. 252, 259 (B.A.P. 9th Cir. 2010); (iv) DLJ further argues that; "… the volume or amount of documents sent to a debtor does not make the documents or notices that are informational in nature a violation of the discharge injunction" citing In re Mele, 486 B.R. 546, 552-554 (Bankr. N.D. Ga 2013); (v) the two (2) escrow analysis statements sent to the Debtor were not an attempt to collect a debt, but are required by law pursuant to 24 C.F.R. §3500.17(b) regarding the taxes and insurance payments in the bank's escrow account, given that the Debtor has remained in possession of the

mortgaged property. Thus, the escrow statements sent does not constitute a willful violation of the discharge injunction; (vi) the four (4) flood insurance letters clearly indicated in bold letters that they were intended for informational purposes only and were not to be considered an attempt to collect a debt. These letters did not coerce payment from Debtor. See In re Henriquez, 536 B.R. 341, 348 (Bankr. N.D. Ga. 2015) ("A mortgagor's *in rem* rights still exist after a debtor obtains a discharge. The [creditor] had a right to protect its collateral by obtaining insurance on the property if the Plaintiff's did not provide evidence that the property was insured"); (vii) the monthly loan statements sent by SPS all followed the same format which included a clear statement in bold capital letters that they were "NOT AN ATTEMPT TO COLLECT A DEBT. THIS STATEMENT IS BEING SENT FOR INFORMATIONAL PURPOSES ONLY. We acknowledge your bankruptcy filing…" The monthly loan statements were sent in compliance with the Truth-in-Lending Act and Regulation Z that require that mortgage lender provide the consumer a statement for each billing cycle setting forth the amount due, the payment due date, the amount of any late fees, and other requirements. 12 CFR §1026.41(a)(2). See In re Lemieux, 520 B.R. 361, 366 (Bankr. D. Mass. 2014)("[e]ven a hypothetical unsophisticated consumer should understand after reading the [] disclaimer [] that the monthly statements are not demands for payment"); See also; In re Nordlund, 494 B.R. 507, 517 (Bankr. N.D. Cal. 2011)("[e]ven though the statements contain outstanding payment amounts, payment due dates, payment instructions, and include a payment coupon, the language in each statement indicates that they are not an attempt to collect a discharged debt")(Docket No. 37-1). On May 19, 2016, the court granted the Defendant's motion requesting leave to file a sur reply regarding Docket No. 36 (Docket #37) (Docket No. 39).

On May June 15, 2016, the Plaintiff filed her *Reply to Sur-Reply* contending that: (i) BPPR's *Motion Requesting Judgment by Default* filed on February 22, 2011 in state court in the fifth paragraph requested to "divide the cause of action limiting the [judgment] be only in regards to the collection of monies." Also, in the prayer of relief of said motion, BPPR requested a Judgment by Default but "…only in regards to the collection of monies reserving

the Court in regards to the mortgage execution until the Plaintiff submits evidence of the registration of the mortgage deed." Thus, BPPR's motion pursuant to Rule 56.4 of the Rules of Civil Procedure was a request to attempt to collect a personal, discharged debt in direct violation of the Discharge Order granted on September 14, 2010; and (ii) "[t]hus, there being a judgment in the [s]tate [c]ase, which is final and unappealable, that because the person who appeared in the registry as the owner of the property was not the Debtor, the annotation seizure and thus the mortgage were barred from being registered. Because the bank refused to obey the [s]tate [c]ourt's order, this made the mortgage into a personal debt which was fully discharged by the Bankruptcy Court. Creditors could no longer move against the [d]ebt without violating the [d]ischarge [i]njunction" (Docket No. 42).

The parties agree as to the following uncontested material facts (Docket Nos. 18, 24, 28-1, 28-2, 33, 34 & 35):

Material Uncontested Facts

1. On April 22, 2005, Debtor executed a note in favor of Popular Mortgage, Inc. ("Popular Mortgage"), or to its order, for the principal sum of $225,000 with interest at the rate of 3.50% annually (the "Mortgage Note") before Notary Public Héctor M. Lúgaro Figueroa.

2. On April 22, 2005, to guarantee the Mortgage Note in favor of Popular Mortgage, the Debtor executed Mortgage Deed number 245 (the "Mortgage Deed"), before Notary Public Héctor M. Lúgaro Figueroa. DLJ is now the current holder of the Mortgage Note.

3. The Mortgage Deed was filed for recording in the Property Registry, Humacao Section on June 1, 2005.

4. On March 2, 2010, the Debtor executed a "Deed of Modification and Partial Cancellation of Mortgage" (the "Deed Modification"), deed number 58 before Notary

Public Rafael Maldonado Nicolai. According to the terms of the loan secured by the Mortgage Deed, it would begin payments on June 1, 2005 and be due and payable on May 1, 2010. Debtor and Popular Mortgage agreed to modify the Mortgage Note and Mortgage Deed pursuant to the following terms: (i) the mortgage was partially cancelled in the amount of $9,700. The principal amount of the Mortgage Deed with the modification would be $215,300 instead of $225,000; (ii) the annual interest rate was adjusted from 6% annually to 3.50%; and (iii) Debtor agreed to make 83 consecutive monthly payments in the amount of $1,290.83 beginning on May 1, 2010 and one final balloon payment in the amount of $194,284.67, which would be payment number 84.

5. The Deed of Modification was filed for recording with the Property Registry on April 5, 2010.

6. On June 5, 2010, the Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code (lead case No. 10-04937).

7. The Debtor in her Chapter 7 bankruptcy petition (case no. 10-04937) listed in Schedule D, "Banco Popular Hipotecas" as a secured creditor.

8. At the time of the Plaintiff's bankruptcy filing, the Debtor was the owner and is still the owner of a real estate property located at Palmas Doradas A-203-C, Palmas del Mar, Humacao, Puerto Rico. The property was disclosed in the schedules.

9. On July 15, 2010, the Chapter 7 Trustee rendered a "Report of No Distribution" in case no. 10-04937.

10. On July 16, 2010, the Chapter 7 Trustee filed the notice of abandonment of property which included Debtor's real estate property. The lien in favor of BPPR was greater than the value of the property and/or it held no value to the estate.

11. On September 14, 2010, the court granted Debtor a discharge under 11 U.S.C. §727 in case number 10-04937.

12. On September 24, 2010, the court entered an Order discharging the Trustee and closing the case.

13. On November 10, 2010, BPPR filed a complaint for collection of monies and execution of mortgage at the state court, Humacao Part, civil case no. HSCI201001388, Banco Popular de Puerto Rico v. Ingard Cecile McConnie Navarro.

14. On February 25, 2011, a default judgment was entered against the Debtor in the state court case, Banco Popular de Puerto Rico v. Ingard Cecile McConnie Navarro. The default judgment was notified on March 21, 2011. The Court of First Instance determined that the foreclosure of the mortgaged property would have to wait until the Mortgage Deed and Deed of Modification were recorded and evidence was provided to that effect.

15. On May 13, 2011, BPPR filed a "Motion under Rule 56.4 of Civil Procedure" (the "Motion for Attachment") to request the entry of an attachment order and prohibition to alienate in execution of the Judgment entered in its favor, as the Mortgage Deed and Deed of Modification had been presented for recordation with the Property Registry but were yet unrecorded.

16. In response to the Motion for Attachment, the state court ordered BPPR to submit a sworn title study as to the Palmas del Mal real property.

17. On June 21, 2011, after the sworn title study was submitted by BPPR, the state court denied BPPR's Motion for Attachment because the Debtor's property was still registered under the name of the developer of the Palmas del Mar apartment complex, who was not a party to the foreclosure action.

-14-

18. BPPR requested reconsideration of the state court's June 21, 2011 Order on July 1, 2011 and also filed a second motion for reconsideration on February 17, 2012. Both motions were denied on February 23, 2012.

19. On March 30, 2012, BPPR filed a certiorari before the Appellate Court, case no. KLCE2012-00420. On April 30, 2012, the certiorari was denied for lack of jurisdiction.

20. Debtor claimed the real estate property as her homestead on March 21, 2012 (Case No. 14-01796, Docket No. 80, pg. 55, Title Study dated July 24, 2014).

21. The Mortgage Deed was recorded by the Property Registrar on April 27, 2012.

22. The Deed of Modification was recorded by the Property Registrar on April 27, 2012.

23. On November 15, 2013, BPPR and DLJ filed in state court an "Urgent Motion Requesting Substitution of Party" ("Motion to Substitute"). In the Motion to Substitute, BPPR informed the court that it had sold its credit to DLJ on November 1, 2013, and that DLJ would continue as Plaintiff in said action.

24. On November 25, 2013, the state court ordered DLJ to submit a copy of the endorsed mortgage note.

25. On March 13, 2014, DLJ filed a "Motion in Compliance with Court Order" submitting a copy of the requested endorsed mortgage note.

26. On April 22, 2014, the Debtor filed an "Urgent Motion to Stay Proceedings..." whereby she informed the state court that she had filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code.

27. On April 23, 2014, the state court ordered the stay of proceedings.

28. On or around March 19, 2014 and March 30, 2015, SPS sent two (2) escrow analysis statements to Debtor for the years 2014 and 2015 respectively.

29. On or around July 27, 2015, August 26, 2015 and September 29, 2015, SPS sent notices informing the Debtor of her duty to maintain flood insurance coverage for the Palmas del Mar Real Property, and the eventual force placement of the same.

30. SPS sent Debtor monthly loan statements from November 18, 2014 to September 18, 2015.

## Applicable Law and Analysis

*Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its

-17-

opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

For the reasons explained below, this court denies the Plaintiff's *Motion for Summary Judgment* and grants *DLJ and SPS' Opposition to Motion for Summary Judgment*.

The first issue before the court is whether the secured creditor's *in rem* rights survived the Chapter 7 liquidation or were discharged given that they had been presented pre-petition to the Property Registry but the same had not been registered (recorded) prior to the filing of the bankruptcy petition. The second issue is whether BPPR and DLJ and SPS as the servicing agent violated the Debtor's discharge injunction by filing an action of annotation of seizure (pursuant to Rule 56.1 of the Puerto Rico Rules of Civil Procedure) in state court and whether the monthly loan statements, escrow account information documents and flood insurance documents sent by SPS as mortgage servicer of DLJ constituted a violation of the discharge injunction pursuant to 11 U.S.C. §524(a)(2).

*The Effect of Discharge pursuant to 11 U.S.C. §524(a)*

Section 524 governs a debtor's discharge in bankruptcy.  11 U.S.C. §524(a)(1) and (2) provide:

> "A discharge in a case under this title—
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. §524(a)(1), (2).

Therefore, "[t]he discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. §362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as; letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment." In re Laboy, 2010 WL 427780, at *5 (Bankr. D.P.R. 2010). "The discharge injunction embodies the fresh start policy of the Bankruptcy Code, by which honest but unfortunate debtors are relieved of personal liability for their discharged debts." Best v. Nationstar Mortg. LLC (In re Best), 540 B.R. 1, 8 (B.A.P. 1st Cir. 2015)(internal quotations omitted), quoting Lemieux v. America's Servicing Co. (In re Lemieux), 520 B.R. 361, 364 (Bankr. D. Mass. 2014). "A bankruptcy court may invoke §105 to enforce the discharge injunction imposed by §524, and order damages if the circumstances so require." Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009). "[A]ny sanctions imposed for violations [are] in the nature of civil contempt." In re Canning, 706 F. 3d 64, 69 (1st Cir. 2013).

The discharge injunction has some limitations. "Discharge affects only personal obligations: unavoided liens survive a discharge with regard to the debtor's pre-petition property to the value of the lien but not beyond." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §8:2 Vol. 2 (5th ed. 2016), p. 9-11. Thus, a secured creditor's right to foreclose on a pre-petition lien against a debtor's

property survives through the bankruptcy unaffected by the discharge. See Johnson v. Home State Bank, 501 U.S. 78, 82-83, 111 S. Ct. 2150, 2153, 115 L. Ed. 2d 66, 73-74 (1991). "Thus, a creditor may enforce a prepetition judgment lien after the discharge, if the automatic stay is no longer in effect and the lien has not been avoided, paid, or modified so as to preclude enforcement." See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[1](16th ed. 2016). "Thus, a mortgagee's lien survives and is unaffected by the discharge, regardless of whether the mortgagee files a proof of claim or otherwise asserts its interest during the course of a bankruptcy case. Further, a secured creditor is permitted to proceed with postdischarge foreclosure proceedings without any prior application to the bankruptcy court. In this connection, courts have held that it is not *per se* improper for a secured creditor to contact a debtor to send payment coupons, determine whether payments will be made on the secured debt or inform the debtor of a possible foreclosure or repossession, as long as it is clear the creditor is not attempting to collect the debt as a personal liability." Id at 524.02[2][d]. The discharge injunction does not prohibit every communication between the creditor and a debtor, only those intended "to collect, recover or offset any such debt as a personal liability of the debtor." Best v. Nationstar Mortg. LLC (In re Best), 540 B.R. 1, 9 (B.A.P. 1st Cir. 2015) citing In re Gill, 529 B.R. 31, 37 (Bankr. W.D.N.Y. 2015).

*Section 524(j) Exception to Discharge Injunction*

Section 524(j) provides an exception to the discharge injunction for creditors that hold claims secured by the debtor's principal residence as long as the creditor's actions are in conformity with the course of business between the debtor and creditor, and is limited to seeking payments in lieu of *in rem* relief. Section 524(j) provides:

"[s]ubsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—

   (1)      such creditor retains a security interest in real property that is the principal residence of the debtor;
   (2)      such act is in the ordinary course of business between the creditor and the debtor; and

-20-

(3)    such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of *in rem* relief to enforce the lien" 11 U.S.C. §524(j).

All of Section 524(j) requirements must be satisfied for the exception to apply. If any of the requirements is not met, then the creditor remains subject to 11 U.S.C. §524(a)(2) discharge injunction. See In re Best, 540 B.R. at 10.

Security interests in residential real property enjoy an exception. "Section 524(j) provides, however, that the postdischarge injunction is not applicable to acts by a secured creditor who holds a security interest in the real property that is the principal residence of the debtor if the act is in the ordinary course of business between the creditor and the debtor and the act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of *in rem* relief to enforce the lien." "The law thus attempts to create a safe harbor for a mortgage servicer to continue to send advices of and payment books to the debtor even if the personal debt has been discharged. The practical effect of a discharge is not to extinguish discharged obligations of the debtor, but instead to make the personal obligation uncollectable."   Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §8:2 Vol. 2 (5th ed. 2016), p. 14. "Section 524(j) clarifies that when a debtor does not reaffirm a mortgage debt secured by real estate that is the debtor's principal residence, the creditor may continue to send statements to the debtor in the ordinary course of business and collect payments made voluntarily by the debtor. The provision makes clear that debtors do not have to reaffirm such debts in order to keep paying them." See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.09 (16th ed. 2016). "Many mortgage creditors include a notice in such communications that the communications are for informational purposes only and are not intended as attempts to collect a debt. However, such a disclaimer does not immunize a creditor from sanctions if other parts of the communication or other actions seek collection of the debt."… "It does not authorize the seeking of an *in personam* judgment against the debtor." Id. at ¶524.09.

-21-

*Violation of Discharge Injunction*

A creditor violates the discharge injunction when it (i) has notice of the debtor's discharge; (ii) intends the actions which constitute the violation; and (iii) acts in a way that improperly coerces or harasses the debtor. In re Lumb, 401 B.R. at 6. In determining discharge injunction violations, the crucial issue is whether the creditor acted in such a way to "coerce" or "harass" the debtor improperly. See Pratt v. GMAC (In re Pratt), 432 F.3d 14, 19 (1st Cir. 2006) (citing In re Diamond, 346 F. 3d 224, 227 (1st Cir. 2003)). "Coercion is assessed under an objective standard, and the issue of whether a creditor acted in an objectively coercive manner is determined on the specific facts of each case." Bates v. CitiMortgage, Inc. (In re Bates), 517 B.R. 395, 398 (Bankr. D.N.H. 2014) (citing In re Pratt, 432 F. 3d at 19)); See also; Quiles Aviles v. City of Philadephia Water Revenue Bureau, 532 B.R. 428, 436 (Bankr. D.P.R). "Thus, a debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor (citing In re Schlichtmann, 375 B.R. 41, 95 (Bankr. D. Mass. 2007); Curtis v. Salem Five Mortgage Co., LLC (In re Curtis), 359 B.R. 356 (B.A.P. 1st Cir. 2007). However, the "debtor's subjective feeling of coercion of harassment is not enough." Bates v. CitiMortgage, Inc., 2016 U.S. App. Lexis 22215, *7 (1st Cir. 2016).

The determination is fact specific and made on a case by case basis, as the line between forceful negotiation and improper coercion is not always clear. In re Pratt, 463 F. 3d at 19; In re Schlichtmann, 375 B.R. at 95" In re Lumb, 401 B.R. at 6-7. An action is considered coercive when it is "tantamount to a threat." See Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F. 3d 392, 402 (1st Cir. 2002), or places the debtor "between a rock and a hard place." See Diamond V. Premier Capital, Inc. (In re Diamond), 346 F. 3d 224, 227-228 (1st Cir. 2008). In determining whether an action is coercive, courts consider the "immediateness" of the threatened action and the context in which this action took place. In re Diamond, 346 F. 3d at 227; See also; In re Bates v. Citimortgage, Inc., 2016 U.S. App. Lexis 22215, *8 ("We have no 'specific test' to determine whether a creditor's conduct meets this objective standard, but we

-22-

consider the facts and circumstances of each case, including factors such as the 'immediateness of any threatened action and the context in which a statement is made'"). "….A creditor violates the discharge injunction only if it acts to collect or enforce a prepetition debt; bad acts that do not have a coercive effect on the debtor do not violate the discharge." In re Lumb, 401 B.R at 7 citing In re Schlichtmann, 375 B.R. at 97.

### *Discussion*

The uncontested facts show that the secured creditor's interest over Debtor's real property constitutes a pre-petition interest in property since the mortgage deed and then, subsequently, the deed of modification and partial cancellation of mortgage, were both filed (presented for recordation) with the Property Registrar on June 1, 2005 and April 5, 2010, respectively.

The Debtor filed her first bankruptcy petition on June 5, 2010. During the pendency of the first case, the Debtor nor the Chapter 7 Trustee filed an adversary proceeding for avoidance of a pre-petition mortgage lien (security interest) premised upon the same not being properly perfected pre-petition pursuant to 11 U.S.C. §544 and the Puerto Rico Mortgage Law, 30 L.P.R.A. §§2001 *et seq*. The secured creditor's mortgage deed and the deed of modification and partial cancellation of mortgage had been presented at the time of the Debtor's first bankruptcy petition to the Property Registrar for recordation (registration) and were registered thereafter by the Property Registrar on April 27, 2012. Contrary to the instant case, in the case of Soto Rios v. Banco Popular de Puerto Rico (In re Soto Rios), 2009 Bankr. Lexis 2992, aff'd 2010 Bankr. Lexis 1173 (Bankr. D.P.R. 2010), aff'd 662 F. 3d 112 (1st Cir. 2011), the plaintiffs/debtors filed an avoidance action pursuant to 11 U.S.C. §§544(a) and 547(b). The plaintiffs/debtors argued that under section 544(a) the unrecorded mortgage liens at the time of the filing of the bankruptcy petition were not valid against a bona fide purchaser of real property of the debtor, and thus may be avoided. The debtors/plaintiffs in In re Soto Rios also argued that these unrecorded mortgage liens were voidable as a preferential transfer because they were not perfected at the time of the filing of the bankruptcy petition. The Bankruptcy Court held that

pursuant to the Mortgage Law of Puerto Rico the secured creditor satisfied the requirements of Sections 362(b)(3) and 546(b)(1) of the Bankruptcy Code, and thus, fell within the exception to the automatic stay and the exception to the trustee's avoiding powers under Section 544(a). The court also held that the Plaintiffs failed to establish all the necessary elements of a preferential transfer in conformity with section 11 U.S.C. §547(b) and 547(e)(1)(A).

In the instant case, there was no lien avoidance adversary proceeding filed against the secured creditor to determine whether its pre-petition security interest could be avoided. Rather, the Chapter 7 Trustee in the first bankruptcy petition abandoned the real property pursuant to 11 U.S.C. §554(a) since it had no value to the estate (lead case, docket#10). The secured creditor's right to foreclose on its pre-petition unavoided lien against the Debtor's real property (up to the value of the lien but not beyond) survived the bankruptcy unaffected by the discharge. In the first case, the Debtor's discharge Order was docketed on September 14, 2010 (lead case, Docket No. 15) and the Order discharging the Trustee and closing the estate was docketed on September 24, 2010 (lead case, Docket No. 24).

In view of the foregoing, the court concludes that BPPR's subsequent state court mortgage foreclosure action[3] filed on November 10, 2010 as to its unavoided pre-petition security interest (which survived the discharge), and which was ultimately recorded by the Property Registrar on April 27, 2012, does not constitute a violation of the discharge injunction.

*Written Communication*

The court will now consider whether DLJ and SPS (as the loan servicer) violated the discharge injunction and were thus, trying to collect a discharged debt by mailing the Debtor the following: (i) the monthly statements that were sent to Debtor from November 18, 2014 to

---

[3] The court notes that the Debtor/Plaintiff in her *Reply to Sur-Reply* (Docket No. 42) contends that: (i) BPPR's *Motion Requesting Judgment by Default* filed on February 22, 2011 in state court in the fifth paragraph requested to "divide the cause of action limiting the [judgment] be only in regards to the collection of monies." Also, in the prayer of relief of said motion, BPPR requested a Judgment by Default but "…only in regards to the collection of monies reserving the Court in regards to the mortgage execution until the Plaintiff submits evidence of the registration of the mortgage deed." Thus, BPPR's motion pursuant to Rule 56.4 of the Rules of Civil Procedure was a request to attempt to collect a personal, discharged debt in direct violation of the Discharge Order granted on September 14, 2010. However, this particular allegations are not uncontested material facts and the Plaintiff did not submit with this court, the state court *Motion Requesting Judgment by Default* filed by BPPR as evidence (support) of BPPR's alleged request for collection of monies against Debtor as a personal liability.

-24-

September 18, 2015; (ii) four (4) letters regarding the flood insurance coverage for the year 2015; and (iii) two (2) escrow account statements for the years 2014 and 2015. At the time, SPS mailed these written communications; the state court foreclosure proceedings had been stayed in court due to the fact that Debtor had filed a second bankruptcy. DLJ in the second bankruptcy case filed twice for relief from the automatic stay (second case, Docket Nos. 42 & 80). Ultimately, DLJ was not granted relief from the automatic stay (second case, Docket Nos. 73, 85, 90, 92 & 95). In addition, SPS mailed these written communications during the pendency of the Plaintiff's second bankruptcy proceeding which commenced on March 10, 2014 and concluded on March 28, 2016. The court will review the different types of correspondence sent to the Debtor and then ascertain the cumulative effect of the documents sent to determine whether DLJ and SPS were attempting to collect a debt from Plaintiff personally and thus, trying to coerce the debtor into paying a discharged debt. See Mele v. Bank of Am. Home Loans (In re Mele), 486 B.R. 546, 556 (Bankr. N.D. Ga. 2013); In re Nordlund, 494 B.R. 507, 519 (Bankr. E.D. Cal. 2011).

*(a) Monthly Statements*

The Plaintiff alleges in the motion for summary judgment that DLJ and SPS violated the discharge injunction when it sent eleven (11) monthly statements (collection letters) from November 13, 2014 to September 15, 2015, which allegedly were "… subterfuges like sending collection letters disguised as being 'statement for informational purposes only' with the only purpose being to intimidate and harass the Debtor and trying to defeat the protections afforded under the [d]ischarge" (Docket No. 18, pg. 7). Plaintiff argues that the monthly statements constituted a violation of the discharge injunction due to the following: (i) the monthly statements had the following language: "[a]ny payments made on your account should be sent to the address listed on the attached payment coupon;" (ii) the "Monthly Payment Coupon" instructions read as follows, "make your check payable to Select Portfolio Services;" and (iii) "merely alleging that they were charging $0.00 is not sufficient to save them from violating the discharge." (Docket No. 36, pg. 6).

The court notes that all of the monthly statements have a box at the top right side, titled "Explanation of Amount Due" which states in bold capitalized letters the following: "THIS IS NOT AN ATTEMPT TO COLLECT A DEBT. THIS STATEMENT IS BEING SENT FOR INFORMATIONAL PURPOSES ONLY. We acknowledge your bankruptcy filing. Any payments made on your account should be sent to the address listed in the attached coupon." (Docket No. 28-9, Exhibit 1-f). The transaction activity for each month is left blank in all of the monthly statements, except for the September 15, 2015 statement which includes the following information: (i) principal balance of $215,300, interest in the amount of $67,490.11, ending balance of taxes & insurance in the amount of $80.25, late charges in the amount of $2,710.68, ending balance of expenses paid by servicer in the amount of $715.00 for a total ending balance of $286,296.04.  The section of all the monthly statements titled, "Past Payments Breakdown" regarding the breakdown of payments paid last month and paid year to date has $0.00 in all the different line items. The bottom of the monthly statements is titled "Monthly Payment Coupon" has an "Amount Due" box on the left hand corner which includes the borrower's name, address and account number. Below this information it has the following statement in bold capitalized letters: "THIS IS NOT AN ATTEMPT TO COLLECT A DEBT."

In this adversary proceeding, DLJ and SPS did not invoke the section 524(j) exception to the discharge injunction, most likely because there was a pending state court foreclosure proceeding which was stayed by the Debtor's second bankruptcy filing, meaning that the monthly statements mailed were not in lieu of *in rem* proceedings and thus, were not sent to the Debtor to obtain periodic payments associated with a valid security interest (given that the secured creditor had filed foreclosure proceedings in state court to collect on its secured debt and filed two motions requesting relief from the automatic stay).

DLJ and SPS argue that the monthly loan statements sent to the Debtor are a requirement under the Mortgage Servicing Rules under the Truth in Lending Act (Regulation Z) that requires mortgage lenders provide the consumer a statement for each billing cycle pursuant to 12 C.F.R. §1026.41(a)(2). However, 12 C.F.R. §1026.41(e)(5) provides in pertinent part:

"1. Commencing a case.

The requirements of §1026.41do not apply once a petition is filed under Title 11 of the United States Code, commencing a case in which the consumer is a debtor.

2. Obligation to Resume Sending Periodic Statements.

i. With respect to any portion of the mortgage debt that is not discharged, a servicer must resume sending periodic statements in compliance with §1026.41 within a reasonably prompt time after the next payment due date that follows the earliest of any of three potential outcomes in the consumer's bankruptcy case: the case is dismissed, the case is closed, or the consumer receives a discharge under 11 U.S.C. 727, 1141, 1228, or 1328. However, this requirement to resume sending periodic statements does not require a servicer to communicate with a consumer in a manner that would be inconsistent with applicable bankruptcy law or a court order in a bankruptcy case. To the extent permitted by such a law or court order, a servicer may adapt the requirements of §1026.41 in any manner believed necessary.

ii. The periodic statement is not required for any portion of the mortgage debt that is discharged under applicable provisions of the U.S. Bankruptcy Code. If the consumer's bankruptcy case is revived—for example if the court reinstates a previously dismissed case, reopens the case, or revokes a discharge—the services is again exempt from the requirements in §1026.41." 12 C.F.R. §1026.41(e)(5).

Consequently, 12 C.F.R. §1026.41(e)(5) exempts a mortgage servicer from the requirements of 12 C.F.R. §1026.41 in the event that the consumer's bankruptcy case is reopened. Notwithstanding, sending monthly statements to the Plaintiff by itself does not constitute a violation of the discharge injunction under 524(a)(2). The court concludes that the monthly statements in question all contained language in bold capitalized letters in two different parts of the page, namely under the "Explanation of Amount Due" at the top right hand corner and at the bottom left hand corner under the "Amount Due" which stated that, this is not an attempt to collect a debt. Under the "Explanation of Amount Due" it also stated in bold capitalized letters that "this information is being sent for informational purposes only." Moreover, at the bottom of the page, which is the "Monthly Payment Coupon" section, in all of the statements the amounts of the monthly payment, additional principal, additional escrow, late

fees and other are all left in blank. The court notes that these mortgage statements did not include the amount of payment, a due date, a late charge if not received by a certain date, or a past due amount and included disclaimers. The court finds that these statements should have made it clear to the Plaintiff that the monthly statements were being provided for informational purposes only and that it clearly stated that "this is not an attempt to collect a debt" in two different sections of the monthly statements. In <u>Whitman Nieves</u>, this court held that the creditor violated the discharge injunction by sending (mailing) a payment booklet requesting monthly payments from the co-debtor at her mother's address. The case of <u>In re Whitman Nieves</u>, 519 B.R. 1, is inapposite to the instant case as the facts are different.

Thus, for these reasons, the court finds that SPS and DLJ's actions in sending the monthly mortgage statements did not violate the discharge injunction since they did not demand payment nor were an attempt to collect a debt from the Debtor personally.

*(b) Insurance Coverage Letters*

The Plaintiff also alleges that DLJ and SPS willfully violated the discharge injunction (during the pendency of the second bankruptcy case) when it sent four (4) insurance letters on July 27, 2015, August 26, 2015, September 21, 2015 and September 29, 2015 (collection letters) that were "thinly disguised as being for 'informational purposes only' only when their true intention was to harass the debtor in order to collect on a fully discharged debt" (Docket No. 42, pg. 10).  The insurance letters have similar formats which consist of the following: (i) a letter informing the debtor that that he or she has to provide flood insurance policy for the property address referenced above since they do not have proof of coverage. The letter further states that if they do not receive proof of continuous coverage, then they will buy an insurance policy for your home in 45 days and this will increase your monthly mortgage statement. It also states in bold letters that, "[t]he flood insurance policy that we buy: Will cost an estimated $651.00

annually, which may be significantly more expensive than flood insurance you can purchase yourself. Will provide $72,340 worth of coverage, which may not fully protect your home." On the second page of the letter, it states in bold letters in the Spanish language that this letter discloses important information regarding your rights and to translate the same. It further states that their bilingual representatives are at your disposition to answer any questions and provides the phone number. After said disclosure, the letter discloses in bold letters in the English language that, "[t]his information is intended for informational purposes only and is not considered an attempt to collect a debt" (ii) a page titled, "Benefits of Purchasing Your Own Flood Insurance" which provides information divided in two columns; namely; information regarding the benefits of purchasing your own flood insurance and as to the possible consequences if we must buy flood insurance for you; (iii) a two page "Frequently Asked Questions" section; (iv) a two page section titled, "Flood Insurance Requirements;" (v) a "Proof of Insurance Cover Sheet;" (vi) a "LOMA or LOMR-F Submission Sheet;" and (vii) the last page is titled, "Important Legal Information" which states the following in bold letters:

> "If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.
>
> To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.
>
> If your account is in foreclosure or foreclosure was previously completed on your account, this notice does not in any way change that, nor does it affect the status of the active or completed foreclosure" (Docket No. 28-8, Exhibit 1-e).

The court notes that the third letter dated September 21, 2015 regarding flood insurance differs from the other two since it informs the customer that, "[w]e bought a lender-placed flood insurance policy for the property address listed above." The letter informs the customer that they have bought a flood insurance policy since they did not receive proof of insurance

coverage and have "added the cost for this policy to your monthly mortgage payment." The fourth insurance letter dated September 29, 2015, requests the customer to "provide flood insurance information for the property address referenced above" since SPS does not have proof of coverage as of September 25, 2015. The letter further states that, "[u]nless we receive proof of continuous coverage, we'll buy an insurance policy for your home in 45 days. This will increase your monthly mortgage payment." The letter further states that the flood insurance policy that they buy will: "cost an estimated $1,938.00 annually, which may be significantly more expensive than flood insurance you can purchase yourself. Will provide $215,300 worth of coverage, which may not fully protect your home" (Docket No. 28-8, Exhibit 1-e). The flood insurance letters, in particular the third and fourth letters are contradictory since the third letter dated September 21, 2015 informs the customer that flood insurance was purchased and that cost for this policy (effective as of July 22, 2015) will be added to the monthly mortgage statement. Eight days later, on September 29, 2015, SPS sent Debtor a letter requesting evidence of flood insurance coverage since it does not have proof of coverage as of September 25, 2015 and SPS further states that if it does not receive proof of continuous coverage, it will purchase an insurance policy for your home in 45 days. The court notes that the September 15, 2015 monthly statement which is the only one that includes transaction activity discloses a September 15, 2015 flood insurance charge in the amount of $108.50 (Docket No. 28-9, Exhibit 1-f).

All of these four (4) flood insurance letters were sent to the Debtor during the pendency of her second bankruptcy filing during which the state court foreclosure proceeding was held in abeyance. The court finds that the flood insurance letters contain language requesting the Debtor to provide proof of flood insurance coverage and if not, SPS will purchase said insurance which will increase the monthly mortgage payment. The September 21, 2015 letter

informs the Debtor that SPS bought a flood insurance policy and the cost of the same has been added to your monthly mortgage payment. However, the September 15, 2015 monthly statement did not demand payment or was an attempt to collect a debt from the Debtor. The court further finds that all the insurance letters on the second page, included a disclaimer in bold letters stating that this information is for informational purposes only and is not considered an attempt to collect a debt. Moreover, all the letters also include bankruptcy disclaimers under "Important Legal Information" stating in pertinent part that, "[t]o the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation." However, it is important to recognize that disclaimer language may not be used to shield an improper demand for payment should there be one. Thus, a legal disclaimer does not provide carte blanche to violate statutory prohibitions. See In re Hebner, 2015 Bankr. Lexis 48, *9-10 (Bankr. D. Neb. 2015). The language in each statement must be analyzed to determine whether it is an attempt to collect a discharged debt from the Debtor. See In re Best, 540 B.R. at 11 (citing In re Lemieux, 520 B.R. at 366 citing In re Nordlund, 494 B.R. 507, 517 (Bankr. E.D. Cal. 2011) ("[E]ven though the statements contain outstanding payment amounts, payment due dates, payment instructions, and include a payment coupon, the language in each statement indicates that they are not an attempt to collect a discharged debt.")). The Plaintiff did not present evidence that DLJ or SPS tried to collect from her personally the cost of the insurance policy by mailing invoices/statements demanding payment. The secured creditor has a right to protect its secured interest (the collateral) by obtaining flood insurance if the Plaintiff does not provide evidence that the property is insured. See Henriquez v. Green Tree Servicing, LLC (In re Henriquez), 536 B.R. 341, 348 (Bankr. N.D. Ga. 2015).

Thus, the court finds that the secured creditor did not violate the discharge injunction by sending insurance coverage notices.

*(c) Escrow Account Statements*

The Plaintiff also alleges that DLJ and SPS willfully violated the discharge injunction in the first bankruptcy case and during the pendency of the second bankruptcy case) when it sent two (2) escrow account statements on March 19, 2014 and March 30, 2015 that were "thinly disguised as being for 'informational purposes only' only when their true intention was to harass the debtor in order to collect on a fully discharged debt" (Docket No. 42, pg. 10). Both of the escrow account statements at the top in bold letters state the following: "This statement is for informational purposes only. RE: Important notice regarding your Escrow and your new mortgage payment amount." (Docket No. 28-7, Exhibit 1-d). The escrow account statements include information as to the new monthly payments which include the regular escrow payments. Right below the new monthly payment amount, the following statement is included: "[s]ince you are in active bankruptcy, your new payment amount shown above is the amount due on the payment due date for each month starting on the month following the date you filed your petition. If the trustee is making your mortgage payments directly to SPS, you may need to modify your plan." The court finds that these escrow account statements were for informational purposes only since the purpose of the same was to inform the Debtor who had filed a second bankruptcy proceeding, the new monthly payments which included the amount allocated to the monthly regular escrow payments. The court concludes that the escrow statements are informational in nature and do not constitute an attempt to collect a discharged debt.

In this case, a total of 17 documents were sent to the Debtor during an 18 month period (March 2014- September 2015). None of the seventeen documents on an individual basis attempts to collect a debt personally from Plaintiff or coerce the debtor into making a payment

of a discharged debt. However, the court must consider the collective effect of these seventeen documents and whether the cumulative effect constitutes an attempt to coerce the debtor into making a payment of a discharged debt. The two (2) escrow statements that were sent were for the year 2014 and the year 2015 were sent for informational purposes regarding the new monthly payment amount. The letters regarding the flood insurance policy for the Debtor's residence included legal disclaimers and were not an attempt to collect personally from the Debtor. In addition, the monthly account statements were informational in nature, and in ten of the eleven statements, the only information that it included was the amount of the interest bearing principal which equaled the outstanding principal. Moreover, note 1 clarifies that the amount of the outstanding principal is not a payoff quote. The last monthly account statement besides the outstanding principle discloses as part of the transaction activity the ending balance which includes interest, taxes and insurance, late charges and expenses paid by servicer. The court notes that the monthly statements the Debtor received did not include the payment amount, a due date, a late charge if not received by a certain date, a past due amount and the same disclosed in bold letters that it was not an attempt to collect a debt and the statements were being sent for informational purposes only.

Thus, the court concludes that the cumulative effect of all the correspondence the Defendant sent Plaintiff does not constitute an attempt to collect a debt personally from Plaintiff or improperly coerce (harass) the Plaintiff into making payments. The court after considering the context in which 17 documents were sent over an 18 month period which overlapped with the pendency of the Debtor's second bankruptcy proceeding and with two motions from DLJ requesting relief from the automatic stay to continue foreclosure proceedings in state court concludes that the secured creditor was not attempting to collect payment personally from the Debtor on a discharged debt. DLJ was trying to enforce its collection action on its secured debt

(which was not discharged) through foreclosure proceedings and the letters sent were informational in nature and purpose.

### Conclusion

In view of the foregoing, Plaintiffs' *Motion for Summary Judgment* (Docket No. 18) is hereby denied and SPS and DLJ's *Opposition to Plaintiff's Motion for Summary Judgment* is granted (Docket No.28).

SO ORDERED.

Judgment will be entered accordingly.

In San Juan, Puerto Rico, this 9th day of January, 2017.

Enrique S. Lamoutte
United States Bankruptcy Judge